UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT LEE BOLES, JR.,

        Plaintiff,

v.

JOAN E. ROGERS et al.,

        Defendants.
_____/

Case No. 1:18-cv-1297

Honorable Robert J. Jonker

OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Registered Dietitian

Joan E. Rogers, Registered Dietitian Patricia M. Willard, Trinity Food Service Director Charles Bernard, Trinity Food Line Supervisor Tonya Lamp, Trinity Food Service Director Greg Torrey, Trinity Food Line Worker Unknown Little, Trinity Food Line Supervisor Unknown Rogers, and Trinity Services Group, Inc.

Plaintiff alleges that in 2001, he was diagnosed with refractory hypertension and was prescribed a 2 gm low sodium diet. Plaintiff states that he was on this diet continuously, except for a period of 21 days in 2005, when his diet detail was mistakenly cancelled. During this period, Plaintiff ate from the general population menu and his blood pressure became elevated to averages of 183/95. In addition, Plaintiff experienced blurred vision, headaches, and dizziness. As a result, Plaintiff's diet order was reinstated.

Plaintiff states that the MDOC diet manual, which is approved by the Chief Clinical Dietitian, the Chief Medical Officer, and the Health Services Administrator, indicates which foods are allowed for the various therapeutic diets. Beginning in August 2015, Plaintiff asked Trinity Food Service employees why his diet meals were not coming off the general population line. Plaintiff was not given an answer.

On January 29, 2016, Plaintiff complained to Defendant Little that he should not be receiving hamburger cabbage casserole from the regular diet line. Defendant Little stated that she was following instructions from her supervisor. Plaintiff filed a grievance against Defendants Bernard, Lamp, Little, and Trinity Services for violating his right to receive a low sodium diet. On March 23, 2016, Defendant Torrey responded to the grievance by stating that he would contact the dietitian to find out what items could be served off the main menu to prisoners on a low sodium diet.

On February 9, 2016, Plaintiff filed a grievance complaining that Defendants Lamp, Trinity, and Bernard were continuing to serve him food that did not comply with his low sodium diet. On March 8, 2016, Plaintiff sent a kite to Defendant Joan Rogers stating that he had been given soy instead of chicken on March 6, 2016, and March 7, 2016. Plaintiff told Defendant Joan Rogers that soy was to be avoided by those on a low sodium diet. On March 15, 2016, Defendant Joan Rogers responded by stating that the MDOC Manual stated that soy sauce was to be avoided, not soy.

On May 28, 2016, Plaintiff kited Defendant Joan Rogers because he had been served "chili mac" from the regular diet line, instead of a diet burger. Defendant Joan Rogers responded that she had not written the new Trinity menus and that Trinity was substituting other items for diet beef burgers. Defendant Joan Rogers further stated that although they were using different recipes, the Trinity dietitians were following the requirements of a 2 gm low sodium diet.

On June 6, 2016, Plaintiff wrote to the Chief Clinical Dietitian expressing his concern regarding the fact that Trinity was doing the menus for his low sodium diet. Plaintiff also filed a grievance. Plaintiff's grievance was rejected as untimely. On June 23, 2016, Plaintiff was given meatballs made from processed turkey off the regular menu. On June 25, 2016, Plaintiff was given chili mac off the regular menu, which contained processed meat. Plaintiff filed a grievance, but the step I respondent denied it, stating that Plaintiff had received appropriate food.

On July 24, 2016, Plaintiff spoke with Defendant Food Line Supervisor Unknown Rogers because "Yakisoba" had been discontinued on the general population food line, but was still being served on the medical food line. Plaintiff was hungry and ate his meal, but was subsequently ill and vomited in the chow hall. Defendant Unknown Rogers told Plaintiff that she

was only following orders. Plaintiff filed a grievance. In the step I response, the respondent stated that the dietitian had been consulted and that Yakisoba was acceptable on a 2 gm low sodium diet.

On July 26, 2016, Plaintiff witnessed Regional Inspector Tredell order Defendant Torrey to take the processed chicken off the diet line despite Defendant Torrey's assertions that the chicken was not processed. Defendant Joan Rogers was present during the incident. On March 28, 2017, LCF Deputy Warden B. Morrison told the Warden's Forum that mechanically separated chicken would be served again because it was exactly the same as other chicken, just presented in a different manner.

On March 30, 2017, Plaintiff kited health care complaining that he had been suffering from rashes over the past three months, which Plaintiff believed were the result of an allergy. Plaintiff was seen in health services on April 7, 2017, and was told that they could not determine the cause of his rash. Plaintiff was told that it would be looked at during his next chronic care visit.

On November 6, 2017, Plaintiff was seen by a medical provider and reported having been given high sodium foods, after which he experienced blurred vision, dizziness, and headaches. Plaintiff also stated that he experienced rashes, blurred vision, dizziness, and headaches after eating soy products. Plaintiff was told to contact the dietitian.

Plaintiff subsequently sent several kites to Defendant Joan Rogers regarding his diet. On January 22, 2018, Defendant Joan Rogers sent responses addressing Plaintiff's kites. In the first response, Defendant Joan Rogers stated that the new adjusted menus use more foods from the regular line, but continue to follow the appropriate therapeutic diet restrictions. In the second response, Defendant Joan Rogers stated that many of the diet items were changed, but they all complied with the 2 gm low sodium diet. In the third response, Defendant Joan Rogers addressed

4

specific menu item changes and stated that no corrections needed to be made even when many of the items came off the regular food line.

On January 29, 2018, Defendant Joan Rogers responded to a kite by stating that Plaintiff did not have any documented history of allergy to soy, and that Plaintiff's claim of weight loss was not legitimate because he had actually gained one pound since June 19, 2017. On February 15, 2018, Defendant Joan Rogers sent another kite reassuring Plaintiff that no corrections were needed for the menu. Plaintiff filed a grievance against Trinity and MDOC dietician February 18, 2018.

On February 24, 2018, Plaintiff had an appointment with Dr. Sices, where he reported having rashes after eating soy based foods for the past year and a half. Dr. Sices reviewed Plaintiff's file and told him that he might get into trouble, but he was going to order a "no soy" diet detail on Plaintiff's behalf. Dr. Sices also ordered an allergy test. Dr. Sices gave Plaintiff two copies of the "no soy" detail, one for food service and one for Plaintiff to keep. Plaintiff subsequently gave one copy to food service.

On February 25, 2018, Defendant Torrey sent an email to Defendant Joan Rogers seeking instruction on the "no soy" diet detail. On February 27, 2018, Defendant Joan Rogers wrote to Dr. Sices recommending that the diet restriction be cancelled. Defendant Joan Rogers informed Dr. Sices that Plaintiff had no documented allergic reactions to soy, and that Plaintiff had previously kited to complain that soy did not give him enough protein. Defendant Joan Rogers concluded that Plaintiff appeared to want soy removed from his diet for personal reasons, rather than because of any allergy. Defendant Joan Rogers further noted that a restriction in soy would actually increase the amount of sodium in Plaintiff's diet. On February 27, 2018, Dr. Sices responded to the email by agreeing that the restriction should be removed.

On March 4, 2018, Plaintiff was served a lunch meal with soy. Plaintiff showed the food service line worker V. Roman the "no soy" detail, but Roman said that the detail had been cancelled by Defendant Joan Rogers. Plaintiff filed a grievance and, on March 19, 2018, he received a response stating that:

> The grievant was seen by the medical provider (MP) on 2/24/18 where a diet detail was written for "no soy." On 2/27/18, the Registered Dietitian (RD) reviewed the grievant's chart, and based on no documentation of an allergic reaction to soy or RAST testing, that there was no medical indication to support the "no soy" diet detail. The RD discontinued the "no soy" with authorization from the ordering MP who electronically signed off on the discontinuation of the "no soy" and continuing with the two gram sodium diet. However, per policy, any medical details and/or special accommodations written by a MP require a visit so an examination can be completed prior to discontinuing the detail/accommodations. An appointment will be scheduled with the MP to evaluate for discontinuation of the "no soy" diet detail. The grievance will be handled administratively.

(ECF No. 1, PageID.27.)

Plaintiff filed step II and III grievance appeals, seeking some sort of punishment for Defendant Joan Rogers and asserting that her cancellation of the "no soy" detail was in retaliation for grievance that Plaintiff had filed on her. Plaintiff claims that Defendant Joan Rogers lied to Dr. Sices when she stated that Plaintiff had expressed concern about the amount of protein in soy. Plaintiff also states that the assertion that omitting soy from Plaintiff's diet would increase his sodium intake was incorrect.

Plaintiff claims that the conduct of all the named Defendants violated his rights under the Eighth Amendment, and that Defendant Joan Rogers retaliated against him in violation of the First Amendment. Plaintiff seeks damages and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. <u>Eighth Amendment</u>

Plaintiff claims that his Eighth Amendment rights were violated as a result of the changes in his therapeutic diet menu beginning in 2015. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863,

8

867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment,

9

federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

As noted above, Plaintiff repeatedly complained about his diet via grievances and kites. Defendants responded to Plaintiff's complaints by looking at the menu, verifying his diet, and assuring him that although the menu had changed, it complied with his therapeutic diet requirements. Plaintiff was seen by health services on two occasions for his complaints. Despite Plaintiff's assertion that he lost weight, his records note that he actually gained a pound during the pertinent time period. Plaintiff's allegations fail to show that he had a confirmed allergy to soy, and he was told that the cause for his rashes had not been identified. None of the allegations set forth in Plaintiff's complaint support a finding that Defendants were deliberately indifferent to a serious medical need. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

IV.     Retaliation

Plaintiff claims that Defendant Joan Rogers retaliated against him for filing a grievance on her when she cancelled his "no soy" diet detail. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim that Defendant Joan Rogers was motivated by a desire to retaliate against him is entirely conclusory. In his recitation of the facts, Plaintiff states that he filed a grievance on Defendant Joan Rogers on June 12, 2016 (PageID.14.), and grievances on "Trinity dietitians" and "MDOC dietitians" on June 23, 2016, June 25, 2016, and February 15, 2018 (PageID.16-17, 22). Plaintiff then alleges that Defendant Joan Rogers cancelled his "no soy" detail on February 27, 2018, stating that Plaintiff did not have a documented history of soy allergy. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

Plaintiff in the instant case, like the plaintiff in *Brandon v. Bergh*, relies solely on conclusory assertions of retaliatory motive. In addition, the Court notes that a defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999). In this case, the order discontinuing the "no soy" detail was approved by Dr. Sices because Defendant Joan Rogers did not have the authority to do more than recommend the discontinuation. The Court concludes that Plaintiff's retaliation claim is properly dismissed as conclusory.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Joan Rogers, Willard, Bernard, Unknown Rogers, Unknown Little, Lamp, Torrey, and Trinity Services Group, Inc., will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   January 16, 2019            /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE